FILED
2015 Aug-07  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ERIC ALAN LUNDBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:14-CV-0796-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Eric Alan Lundberg, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Social Security Disability Insurance Benefits ("DIB"). Mr. Lundberg timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Lundberg was fifty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision (tr. at 22), and he has a Bachelor of Arts degree in Accounting. (Tr. at 31.) His past work experiences include employment as a financial manager and automobile sales person. (Tr. at 33-34, 231.) Mr. Lundberg

claims that he became disabled on July 18, 2011 (tr. at 109), due to chronic obstructive pulmonary disease ("COPD"), depression, anxiety, hypertension, polyarthralgia, and gastroesophageal reflux disease ("GERD"). (Tr. at 192.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See Id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Lundberg last met the insured status requirements of the Social Security Act on December 31, 2011. (Tr. at 15.) He further determined that Mr. Lundberg has not engaged in SGA since the alleged onset of his disability through his date last insured on December 31, 2011. (Tr. at 15, Finding 2.) According to the ALJ, Plaintiff's hypertension, polyarthralgia, GERD, depression, anxiety, and COPD are considered "severe" based on the requirements set forth in the regulations. (Tr. at 15, Finding 3.) However, he found that these impairments, considered singly and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. at 15, Finding 4.) The ALJ did not find Mr. Lundberg's allegations to be entirely credible (tr. at 20), and he determined that Mr. Lundberg has the following RFC: the ability to perform medium work with

the following limitations: no climbing of ladders, ropes, or scaffolds; avoiding concentrated exposure to environmental areas but no noise limits; avoiding all exposure to workplace hazards such as unprotected heights and dangerous machinery; and should not be expected to drive automotive equipment or vehicles. Further, the ALJ determined Plaintiff was limited to unskilled and low-level semiskilled work, with casual and infrequent interaction with the general public, and casual and non-confrontational supervision; and he should work with things rather than people. (Tr. at 16, Finding 5.)

According to the ALJ, Mr. Lundberg is unable to perform any of his past relevant work. (Tr. at 20, Finding 6). He determined that Plaintiff is an "individual closely approaching advanced age," that he has at least a high school education, and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 21, Finding 7). He further determined that Plaintiff has "no transferable skills, as the vocational expert testified." (Tr. at 21, Finding 9.) Because Plaintiff cannot perform the full range of medium work, the ALJ used the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, as a guideline for finding that there are still a significant number of jobs in the national economy that he is capable of performing, such as kitchen helper, laundry worker, and hand packer. (Tr. at 21, Finding 10.) The ALJ concluded his findings by stating

that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 18, 2011, the alleged onset date, through December 31, 2011, the date last insured." (Tr. at 22, Finding 11.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Lundberg alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ failed at step three of the sequential evaluation process to recognize that his impairments meet or equal Listing 1.02A. Second, Plaintiff contends that the ALJ erred in his determination that Plaintiff's subjective pain testimony was not entirely credible.

## A.    Listing 1.02A

Plaintiff contends that the ALJ improperly concluded that he does not meet or equal Listing 1.02A at step three of the sequential evaluation process. At step three, the ALJ had to determine whether Plaintiff's impairments met or equaled an impairment listed in the Listing of Impairments, i.e., a Listing. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).The listings describe impairments that the Commissioner considers severe enough to prevent an individual, regardless of his age, education, or work experience, from performing any gainful activity. *See* 20 C.F.R. § 404.1525(a). The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

A plaintiff bears the burden of proving his impairments met or equaled a listing. *See Doughty*, 245 F.3d at 1278. Additionally, a plaintiff bears the burden of proving he "became disabled prior to the expiration of his disability insured status." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Here, Plaintiff had to prove that he was disabled on or before December 31, 2011, his date last insured.

When a plaintiff contends he has an impairment meeting the listed impairments or equal to one of the impairments, he has the burden "to present specific medical findings that meet the various tests listed under the description of the applicable impairment" or "to present evidence which describes how the impairment has such an equivalency." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citing *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986)); 20 C.F.R. §§ 404.1525 and 404.1526. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). When an impairment manifests only some of those criteria, regardless of the severity, the impairment does not qualify. *Zebley*, 493 U.S. at 530. "To 'equal' a Listing, the medical findings must be at least equal in severity and duration to the listed findings." *Id.* at 531; *see also* 20 C.F.R. § 404.1526(a).

Here, Plaintiff bears the burden of proving he was presumptively disabled under Listing 1.02A,[1] which states in relevant part:

---

[1] Plaintiff does not argue that his impairments met or equaled subsection B of Listing 1.02 or the criteria of any other listing impairment, and therefore, has waived such an argument. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02A. An "[i]nability to ambulate effectively means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Subpart P, App. 1, § 1.00B2b(1). Examples of ineffective ambulation include: the inability to walk without a walker, two crutches or two canes; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id*. § 1.00B2b(2).

Plaintiff has failed to show that his impairment or impairments meet or equal all of the requirements of Listing 1.02A prior to the expiration of his insured status on December 31, 2011. Plaintiff complained to Dr. Alexander, orthopedic specialist, in July 2010, of mild tenderness in his left hip, but Dr. Alexander noted that "[c]linically, most of [Plaintiff's] discomfort appears to be coming from iliotibial

band tendonitis and trochanteric bursitis rather than from the hip joint itself." (Tr. at 215.) A lower back x-ray during that examination revealed no spondylosis or spondylisthesis and very slight right upper lumbar scoliosis. (Tr. at 18, 215). Plaintiff's left hip x-rays showed some arthritis with narrowing in the joint space and small osteophytes, but his right hip x-ray was unremarkable. (Tr. at 18, 215). In December 2011, Dr. Arun, the consultative examining physician, found there was some degree of arthritis in Plaintiff's left hip and some associated pain but noted that Plaintiff "is able to perform activities of daily living." (Tr. at 225.) There was no diagnosis of a hip-related impairment noted in Dr. Arun's assessment. Plaintiff's back and joints showed no deformity or scoliosis. (Tr. at 224). Plaintiff's straight leg raise was 70 degrees, and he exhibited 5/5 muscle strength against resistance. (*Id.*) He could squat and bend down, though he was unable to "heel to toe walk." (*Id.*) Plaintiff's cranial nerves, motor system, sensory system, and reflexes were normal. (Tr. at 224-25). He had some left hip joint discomfort, but otherwise exhibited "satisfactory range of movements." (Tr. at 225). The findings of Drs. Alexander and Arun do not establish that Plaintiff's left leg condition meets or equals the impairments listed in Listing 1.02A.

Plaintiff asserts that medical records in April 2012 from Dr. Goodson are the main evidence of "gross anatomical deformity" in his left leg, as required to meet

or equal the first part of Listing 1.02A. After Plaintiff saw Dr. Kelly in March 2012 for complaints of increased hip pain, Dr. Kelly referred him to Dr. Goodson, an orthopedic surgeon. (Tr. at 297.) Plaintiff saw Dr. Goodson on April 26, 2012, and upon examination Dr. Goodson indicated Plaintiff's left hip x-ray revealed moderate to severe degenerative joint disease.  (Tr. at 283). However, Plaintiff could move all his extremities on command and demonstrated "satisfactory motion of the left hip," though he had pain with extremes of motion. (*Id.*) Dr. Goodson noted Plaintiff was "slightly" limited with his hip and that "[o]verall he is getting along okay." (*Id.*) While Dr. Goodson's treatment notes do reflect his opinion that a total hip arthroplasty is needed at some future date due to Plaintiff's degenerative joint disease (tr. at 202-3), Dr. Goodson's medical records are ineffective in proving Plaintiff meets or equals Listing 1.02A because the treatment notes occurred after December 31, 2011, Plaintiff's date last insured. (Tr. at 282-84.)

Aside from the absence of medical evidence of "gross anatomical deformity," as required by the first part of Listing 1.02A, there is also no medical evidence that Plaintiff cannot ambulate effectively, as required by the second part of Listing 1.02A. Dr. Arun explained in December 2011 that Plaintiff could perform his activities of daily living, did not use a walker or any assistive device regularly, and occasionally used support to climb up or down the stairs. (Tr. at 225). The

record does not reveal any prescriptions for a cane or assistive device. Furthermore, in his 2011 function report, Plaintiff stated he had no problems with personal care. (Tr. at 139). He could go out alone on a daily basis, walk, drive a car, ride in a car, and shop in stores. (Tr. at 141).

Plaintiff asserts his diagnosis of severe COPD, as well as his own testimony that he is unable to walk for more than five minutes at a time due to shortness of breath, renders him unable to ambulate effectively. As an initial matter, a diagnosis alone does mean that an impairment meets or equals a listing. 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis."). Although Plaintiff details the conceivable effects of COPD, he has not demonstrated that his COPD rendered him unable to walk effectively, as defined by the regulations. *See Moore*, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."). Further, the examination notes of Dr. Lynn (tr. at 292, 294, 296) and Plaintiff's own function report (tr. at 141) belie Plaintiff's contention that his COPD diagnosis equates to a failure to ambulate effectively. In June 2012, Dr. Lynn, one of Plaintiff's treating physicians, noted that Plaintiff stated he had been breathing well recently. (Tr. at 294.) In November 2012, Dr. Lynn noted that Plaintiff denied a cough, shortness of

breath, or wheezing. (Tr. at 292.) Plaintiff stated in his function report dated October 27, 2011, that he goes outside daily, walks, and shops in stores a couple of times a week. (Tr. at 141.) Further, with regard to Plaintiff's statement that he is unable to walk for more than five minutes at a time, as discussed below, the ALJ considered Plaintiff's subjective statements and determined they were not entirely credible. (Tr. at 17-18, 20).

Plaintiff also appears to contend the combination of his degenerative joint disease, COPD, depression, anxiety, and alleged side effects from his medications equaled the criteria of Listing 1.02A. However, his contention fails. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment." *Zebley*, 493 U.S. at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* Plaintiff failed to provide medical findings establishing that his impairments equaled the severity of all the criteria in Listing 1.02A. As previously noted, a diagnosis does not speak to the severity of the condition. *See Moore*, 405 F.3d at 1213 n.6. Plaintiff describes the potential effects of his diagnosis of

depression, such as sadness, lack of motivation, fatigue, and difficulty sleeping, but he has not provided medical evidence regarding his impairments that equaled the severity of all of the criteria in Listing 1.02A. Similarly, Plaintiff cites his own hearing testimony that he suffers side effects of his medication, tramadol, such as frequent urination. (Tr. at 43-45.) However, the record is devoid of any reports made to his physicians of frequent urination prior to December 31, 2011, the expiration of his insured status. (Tr. at 125). While Plaintiff points out that Dr. Penland's medical records note side effects from medication, presumably referring to a treatment note from December 2012 indicating that his medication "made him more depressed than his baseline depression," (tr. at 304) that treatment note occurs well after the expiration of Plaintiff's date of last insured. The evidence of record simply does not indicate that any alleged side effects would have interfered with Plaintiff's ability to work or prevented him from performing a modified range of medium work as found by the ALJ. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) ("Mere lists of potential side effects do not establish that a claimant in fact experienced such side effects."). When a claimant fails to present evidence that his medication actually caused his alleged side effects, an ALJ is not required to make findings on the effect of medications and their alleged side effects. *See Passapulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992).

Plaintiff also argues that his Global Assessment of Functioning ("GAF") scores support a finding that he meets or equals Listing 1.02A. (Tr. at 232, 287). Plaintiff received a GAF score of 55 from Dr. McDonald during a psychiatric evaluation in December 2011 (tr. at 230), and he received a GAF score of 50 from Dr. Penland, his treating psychiatrist to whom he complained of depression in May 2012. (Tr. at 286-87). However, he fails to show how these scores are equal or relevant to the criteria found in Listing 1.02A, pertaining to major dysfunction of a joint. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. Significantly, the Commissioner has declined to endorse GAF scores for use in disability programs, and has stated the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000); *see also Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005). Additionally, Plaintiff's reliance on his subjective psychological symptoms is unavailing. As discussed below, the ALJ considered Plaintiff's subjective allegations but found them to be less than fully credible. (Tr. at 17-18, 20). Accordingly, Plaintiff has failed to meet his burden of presenting medical findings that equal all of the criteria of Listing 1.02A.

As a final matter, Plaintiff appears to contend that the ALJ erred by not adequately *explaining* why his impairment or combination of impairments did not meet or equal Listing 1.02A.  However, "[a]lthough the ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate decision." *Gray ex. rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). Further, the Eleventh Circuit has held the "ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record." *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (citation omitted). The ALJ's decision reflects that he properly considered Plaintiff's impairments as a whole in evaluating his claim. (Tr. at 15-20). The ALJ expressly found Plaintiff did not have "an impairment or combination of impairments" that met or equaled a listed impairment. (Tr. at 15, Finding 4). The Eleventh Circuit has repeatedly held that the language used by the ALJ provides sufficient evidence that the ALJ considered the combination of Plaintiff's impairments. *See Hamby v. Soc. Sec. Admin., Comm'r*, 480 F. App'x 548, 550 (11th Cir. 2012) (citing *Wilson*, 284 F.3d at 1224-25).

In sum, substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 1.02A.

### B.    The ALJ's Credibility Determination

Plaintiff also contends that the ALJ erred in finding his subjective pain testimony to be not entirely credible. A claimant's allegations of pain or other symptoms alone are insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a), (c).

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Credibility determinations are the province of the ALJ. *Moore*, 405 F.3d at 1212. The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Id.* (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered his medical condition as a whole." *Id.* (quoting

18

*Foote*, 67 F.3d at 1561) (internal quotations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Mr. Lundberg testified in his hearing that on a good day his pain level is a five and that the pain can reach a level of eight to nine when all he can do is go to bed, and that generally his pain is at a level of seven. (Tr. at 44-45.) He also testified that his prescribed pain medication only takes the edge off. (Tr. at 45.) The ALJ found that Plaintiff has mental and physical impairments, evincing underlying medical conditions and satisfying the first prong of the Eleventh Circuit's pain standard. (Tr. at 17.) However, the ALJ noted, "there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, depression and other symptoms which the claimant alleges have precluded him from working." *Id*. The ALJ found that the evidence simply did not support "the alleged severity of Plaintiff's symptoms." (Tr. at 18-20.)

The ALJ's credibility determination is supported by the record because the medical evidence does not support Plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(2) (noting objective medical evidence is a useful indicator that assists the Commissioner in evaluating a claimant's symptoms). The main medical record Plaintiff cites in support of his contention that his allegations of pain

are supported by the record is that of Dr. Goodson in April 2012. The ALJ discussed these records, noting that Plaintiff's pelvic and left hip x-ray, taken during his examination with Dr. Goodson, revealed moderate to severe degenerative joint disease of the left hip. (Tr. at 18-19, 283-84). However, Dr. Goodson noted Plaintiff moved all his extremities on command.  (Tr. at 283). He displayed satisfactory motion of the left hip, but had pain only with "extremes of motion." (Tr. at 18, 283). Dr. Goodson recommended anti-inflammatory medication, and commented Plaintiff "will likely need a total hip arthroplasty at some point down the road." (Tr. at 284). On a follow-up visit, Dr. Goodson noted Plaintiff was limited "slightly" with his hip but was "[o]verall . . . getting along okay." (Tr. at 282.) He also indicated Plaintiff could continue "working with the chiropractor" and suggested Plaintiff consider "doing an injection at some point down the road." *Id*. Such conservative treatment has been found to discredit a claimant's testimony of disabling pain. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (conservative treatment did not support claimant's subjective complaints). Although Dr. Goodson diagnosed left hip degenerative joint disease, the diagnosis does not establish the severity of a condition or any functional limitations. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability

to work, rather than the diagnosis of an impairment itself.") Moreover, Dr. Goodson's findings occurred after the expiration of Plaintiff's insured status.

Before the expiration of his insured status, the December 2011 notes of Drs. Arun and Lynn fail to establish the severity of pain that Plaintiff alleges. Dr. Arun noted that Plaintiff has "[n]o deformity or scoliosis" and that his "[s]traight leg raise is 70 degrees on both sides." (Tr. at 224.) Dr. Arun also provided a range of motion ("ROM") chart, which shows that Plaintiff's ROM is normal or just below normal in every area and that there is little to no difference in ROM of Plaintiff's right and left hips. (Tr. at 227-28.) Plaintiff demonstrated 5/5 muscle strength against resistance and was able to squat and bend down, though he could not "heel to toe walk." (Tr. at 224). Plaintiff's cranial nerves, motor system, sensory system, and reflexes were normal. (Tr. at 224-25). With respect to his left hip, Plaintiff had "some joint discomfort," but he displayed satisfactory range of movements. (Tr. at 225). Dr. Arun indicated Plaintiff could perform his activities of daily living and did not use a walker or any assistive device regularly. (Tr. at 18, 225). Dr. Lynn similarly noted "[n]o edema or deformity" in Plaintiff's extremities and "denies arthralgia, . . . and] pain" of the musculoskeletal system. (Tr. at 300.) The absence of deformities in Plaintiff's extremities and near-normal ROM clearly contradict the severity of pain alleged by Plaintiff.

Plaintiff also testified at the hearing that he had some concentration and memory difficulties. (Tr. at 43). However, the evidence of record does not show he had disabling mental limitations. Dr. Arun noted Plaintiff's memory was normal. (Tr. at 225). Likewise, Dr. McDonald, the consulting psychologist, indicated Plaintiff's memory appeared intact. (Tr. at 232). As the ALJ noted, Plaintiff displayed average intelligence and adequate insight and judgment. (Tr. at 19, 232). The May 2012 progress note of Dr. Penland, revealed Plaintiff showed adequate insight, linear and goal-directed thoughts, satisfactory attention span, and an undisturbed memory. (Tr. at 19, 287). In August and December 2012, Plaintiff displayed good insight, good concentration, rational thought processing, and normal thought content. (Tr. at 303-04).

Plaintiff's activities of daily living further belie his allegations of disabling symptoms. While the ability to engage in daily living activities does not disqualify a claimant from receiving disability benefits, the Commissioner may properly consider a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010). In October 2011, Plaintiff reported he had no problems with personal care, and could prepare sandwiches, frozen dinners, and simple meals, perform light cleaning and laundry, walk, drive a car, and shop

for "everyday items" and groceries. (Tr. at 139-41). Dr. Arun also noted Plaintiff was able to perform his activities of daily living. (Tr. at 18, 225).

For these reasons, the Court is of the opinion that the ALJ's conclusion that Plaintiff's subjective pain testimony was not entirely credible was supported by the record and not due to be disturbed.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Lundberg's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 7, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704